UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHANNON WARREN-HIGGINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO:1:19-cv-2083 |
| | ) |
| INDIANA UNIVERSITY HEALTH, INC. | ) |
| and INDIANA UNIVERSITY HEALTH | ) |
| CARE ASSOCIATES, INC. d/b/a | ) |
| IU HEALTH PHYSICIANS, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.  Plaintiff, Shannon Warren-Higgins ("Warren-Higgins"), brings this action against Defendants, Indiana University Health Care Associates, Inc. d/b/a IU Health Physicians and Indiana University Health, Inc. ("Defendants"), for unlawfully violating her rights as protected by the Americans With Disabilities Act ("ADA").

## PARTIES

2.  Warren-Higgins has resided within the Southern District of Indiana at all relevant times.

3.  Defendants conduct business within the Southern District of Indiana.

## JURISDICTION AND VENUE

4.  Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 42 U.S.C. § 1988; and 42 U.S.C. § 12117.

5.  Warren-Higgins is an "employee" within the meaning of 42 U.S.C. § 12111(4).

6.  Defendants are "employers" within the meaning of 42 U.S.C. § 12111(5)(A).

7. Warren-Higgins satisfied her obligations to exhaust her administrative remedies, having timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission. The EEOC issued a right-to-sue notice to Warren-Higgins. She now timely files her lawsuit.

8. Venue is proper in this Court.

## FACTUAL ALLEGATIONS

9. Warren-Higgins is a qualified individual with disability, has a record of a disability, and/or has been regarded as disabled by Defendants.

10. Defendants hired Warren-Higgins to be a Patient Access Center Representative in or about September 2016.

11. Warren-Higgins' work performance has met or exceeded Defendants' legitimate expectations.

12. Warren-Higgins has reported to Supervisor Cierre Maxey ("Maxey") and Manager Kelly Skidmore ("Skidmore") at all relevant times.

13. Warren-Higgins is a diabetic and has chronic diabetic episodes that flare up at work and home. Her diabetes significantly impacts at least one major life activity, including, but not limited to, eating, caring for herself, and the functioning of her endocrine system.

14. Since her hire, Warren-Higgins advised Maxey, Skidmore, and human resources multiple times about her disability and its resulting symptoms.

15. In or about September 2017, Warren-Higgins requested reasonable accommodations for her disabilities, including, but not limited to, flexible morning and afternoon breaks, as needed, to take a snack due to low blood sugar, and intermittent leave pursuant to the Family and Medical

Leave Act ("FMLA").

16. In or about September 2017, Warren-Higgins had a diabetic episode. RN Sandy Linderman ("Linderman") told Maxey about the diabetic episode. Linderman told Warren-Higgins about applying for a reasonable accommodation. Warren-Higgins subsequently told Skidmore that she needed an accommodation for her diabetes. He provided her paperwork that she then completed and returned along with a doctor's note. The medical note provided: "Due to Mrs. Warren-Higgins Type 2 diabetes, she requires time for a snack mid-morning and mid-afternoon or if she feels her blood sugar is getting too low." She also provided Maxey her medical note. Defendants granted her requested break accommodation.

17. Warren-Higgins requested a reasonable accommodation in the form of intermittent FMLA leave. The request included leave for medical appointments and for periods of episodic incapacitation. Defendants initially denied, without reason, one of the requests and then subsequently approved her requests for FMLA and reasonable accommodation in the form of intermittent leave.

18. Defendants, through their management employees, including Maxey, created a discriminatory and retaliatory hostile work environment for Warren-Higgins. The conduct was severe or pervasive and altered the terms and conditions of her employment. The hostile actions included, but are not limited to, interfering with the performance of her job duties, diminishing her professional role in the workplace, constantly watching her, unwantonly moving her desk, denying her request for transfer to another team, issuing discipline to her, challenging her use of her accommodations, and making derogatory comments about her diabetes.

19. Defendants unreasonably interfered with Warren-Higgins' requested accommodation

of intermittent leave and placed onerous and cumbersome requirements on her ability to take leave.

20. Defendants approved Warren-Higgins' request for fixed breaks. But, Maxey and Skidmore then claimed she did not have the requested accommodation. Even after the break accommodation had been granted, Maxey and Skidmore required that she redo the accommodation request process. After Maxey and Skidmore were convinced of her approved accommodation, Maxey told her that she was not receiving any other accommodation because she already received paid breaks. Skidmore told her that Defendants did not have to give the break accommodation to her because she was entitled to only one break after working six hours per day.

21. After Defendants had granted Warren-Higgins' leave requests, Maxey and Skidmore interfered with her accommodations when she attempted to leave for an appointment or take intermittent leave. On several occasions when Warren-Higgins attempted to go to medical appointments for her diabetes, Maxey yelled out she was not allowed to call in or leave for her diabetic FMLA. Maxey also aggressively questioned her multiple times why she was leaving or taking the day off, even though she had already disclosed she was taking FMLA. Maxey made false reports to management and human resources employees that Warren-Higgins was leaving the building without advising her she was leaving or the reason for departure. However, Warren-Higgins complied each time with Defendants' notification requirements, including notifying a supervisor that she was leaving, checking out in the Kronos clock out system (system email management), submitting her departure in Aspect (system email management), emailing primary management, and submitting notice in the FMLA Source system (system email management).

22. Maxey made derogatory comments about Warren-Higgins to her team members. On multiple occasions, Maxey rummaged, without permission, through Warren-Higgins' lunch bag to

see what she was eating for the day and then disclosed to the team members what she was eating for lunch. On one occasion, Maxey disclosed that Warren-Higgins was eating banana pudding while claiming to have diabetes. Maxey then stated that she did not want to hear anything about how Warren-Higgins feels sick at times and that she better have "her ass" taking phone calls. On other occasions, she had show and tell with Warren-Higgins' lunch and then made derogatory jokes about her lunch and diabetes.

23. Maxey segregated Warren-Higgins from her team members, especially newer team members. Maxey ordered Warren-Higgins to move her seat away from her and the team members. Maxey told a new coworker that Warren-Higgins was "bad news." The coworker reported Maxey's comment to Skidmore. Skidmore asked the coworker whether he should do anything further to address the comment, after Warren-Higgins had already complained about the hostile environment to Defendants, including Skidmore, Director Shelby Smith (Smith"), and human resources.

24. Warren-Higgins complained several times about the disability and retaliatory harassment to Defendants. Defendants ignored her complaints and took no legitimate action designed to address her complaints. Because nothing had been done, she filed a formal complaint, via email, with Defendants' human resources on or about February 21, 2018. She also submitted an email, dated February 27, 2018, to human resources complaining about Maxey's arbitrary movement of her seat. The day before, she again verbally complained to Skidmore about the harassment.

25. Warren-Higgins asked for a transfer to another team in or about February 2018 because of the harassment. Defendants denied her request.

26. Maxey, Skidmore, and Smith responded to Warren-Higgins' complaints with further harassment and retaliation. They took the unwarranted step of issuing a written corrective action to

her on or about February 27, 2018 – less than one week after she had complained. The written warning had no basis in fact. Skidmore had previously told Warren-Higgins that nearly every employee had a negative PTO balance because of the computer switch-over of employees from Indiana University Health Physicians to Indiana University Health. Skidmore told Warren-Higgins that the PTO did not have to be paid back, that the employees were starting fresh with PTO, and that the employees would not be reprimanded for a negative balance. She relied on Skidmore's representation and took PTO in February 2018 for a diabetic retinal exam. Yet, she received an occurrence and corrective action when she took the PTO day. The retinal exam was related to her and her FMLA/requested accommodation, yet Defendants issued discipline to her for this protected absence. Defendants used her approved accommodation against her.

27. Defendants took adverse employment actions against Warren-Higgins because of her disability, her record of a disability, their perception of her being disabled, and/or her statutorily-protected conduct.

28. All reasons proffered by Defendants for adverse actions they took regarding Warren-Higgins' employment are pretextual.

29. Warren-Higgins has suffered injury and harm as a result of Defendants' unlawful actions, including, but not limited to, emotional distress, inconvenience, humiliation, embarrassment, anger, disgust, frustration, and similar emotions.

## COUNT I

### DISABILITY DISCRIMINATION – ADA

30. Warren-Higgins hereby incorporates paragraphs 1-29 of her Complaint.

31. Warren-Higgins asked for reasonable accommodations.

32. Defendants unreasonably interfered with Warren-Higgins' requested accommodations and used them against her.

33. Defendants took adverse employment actions against Warren-Higgins because of her disability, her record of a disability, and/or their perception of being disabled.

34. Defendants' unlawful actions were intentional, willful, and done in reckless disregard of Warren-Higgins' rights as protected by the ADA.

## COUNT II

## DISABILITY HARASSMENT – ADA

35. Warren-Higgins hereby incorporates paragraphs 1-34 of her Complaint.

36. Defendants created a hostile work environment for Warren-Higgins because of her disability, her record of a disability, and/or their perception of being disabled.

37. Warren-Higgins complained about the hostile work environment to Defendants, but they took no legitimate action designed to remedy the harassment.

38. Defendants' unlawful actions were intentional, willful, and done in reckless disregard of Warren-Higgins' rights as protected by the ADA.

## COUNT III

## RETALIATION – ADA

39. Warren-Higgins hereby incorporates paragraphs 1-38 of her Complaint.

40. Warren-Higgins engaged in statutorily-protected conduct when she asked for reasonable accommodations and complained about the hostile work environment to Defendants.

41. Defendants took adverse employment actions against Warren-Higgins, including, but not limited to, issuing discipline to her and ratcheting up the hostile environment after she engaged

in protected conduct.

42. Defendants' unlawful actions were intentional, willful, and done in reckless disregard of Warren-Higgins' rights as protected by the ADA.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Shannon Warren-Higgins, by counsel, respectfully requests that this Court find for her and order that:

1. Defendants pay compensatory and punitive damages to Warren-Higgins;

2. Defendants rescind any adverse employment actions issued to Warren-Higgins;

3. Defendants pay pre- and post-judgment interest to Warren-Higgins;

4. Defendants pay Warren-Higgins' attorneys' fees and costs incurred in litigating this action; and

5. Defendants pay to Warren-Higgins any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin, Attorney No. 7576-49

*s/ Bradley L. Wilson*
Bradley L. Wilson, Attorney No. 21154-49
Attorneys for Plaintiff
Shannon Warren-Higgins

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana  46204
Telephone:	(317)955-9500
Facsimile:	(317)955-2570
Email:	jhaskin@jhaskinlaw.com
	bwilson@jhaskinlaw.com

## DEMAND FOR JURY TRIAL

Plaintiff, Shannon Warren-Higgins, by counsel, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,

*s/ John H. Haskin*
John H. Haskin, Attorney No. 7576-49